Frankinmuth Mutual Insurance Company v. Fun F-X II is our next case. May it please the Court, Counsel. My name is Ed Foley. Mr. Foley, when we are ready to hear you, your name will be called. Oh, I'm sorry. Okay. Mr. Foley. Thank you, Your Honor. Ed Foley here on behalf of the plaintiff, and my client, Victor Cahill, is with me at counsel table. Your Honor, this is an appeal from a summary judgment ruling, and we believe the overwhelming evidence in the court below shows that there are material issues of fact such that Mr. Cahill and his company should have been permitted to present their claim to a jury. The case involves a fire which destroyed Mr. Cahill's warehouse in July of 19. Mr. Cahill had about $1.6 million in coverage on the building and then additional coverage on the property. He had an active sprinkler system that when he purchased the building, he had replaced all the heads. I think the evidence is there's maybe 100 or so heads in the sprinkler system, and we believe that the system itself was working fine and would have worked at the time of the fire. The problem was, Your Honor, is that a city individual apparently thought that the building next door, which was being demolished, apparently thought that our building, too, was going to be demolished, and he cut and capped the water line which runs underneath the alleyway off of our property and never told us that he had done that. In fact, many people of the city had no idea that this had been done. Nobody found out about this until after the fire. Do you all have a remedy against the city water officials? There is a lawsuit pending against the city, Your Honor, and I believe against the inspection company. I'm not involved in those, but I do believe we do. It was so significant that even the fire department couldn't access the water hydrants there. So the evidence in this case shows that really nobody, probably except the one guy that cut and capped it and never told us, is the only person that knew that had been done. Certainly Mr. Kahle was never told of that. The trial court ruled as a matter of law that that line was part of our private fire protection main, and the court ruled under the protective safeguard endorsement that there was no coverage. If you look at that endorsement, it says as a condition of this insurance, you're required to maintain the protective devices or services listed in the schedule. And then it talks about the sprinkler heads, the duct pipes, et cetera. And then number four, it says pumps and private fire protection mains. The trial judge ruled that the city line that was cut and capped was part of our private fire protection. I wonder why that matters. Policy requires notice of any impairment of the system. And I gather it is agreed that FUN knew for more than a year before the fire that there was no water. Wouldn't one classify a lack of water as impairment of a fire sprinkler system? Yes, Your Honor, but the evidence in the case shows that Mr. Kahle and FUN did not know. There was an incident two years earlier in 17 where an inspector said— Pardon me? FUN had been trying since 2018 to get this water restored. It knew in 2018 that the system lacked water. And I take it it's conceded that FUN never notified the insurer of this. Your Honor, with all due respect, FUN didn't know in 2018 that there was no water. In 2017, there were two instances, one in September and one in November, where Mr. Kahle was told there's no water supply. And he contacted city representatives and the fire marshal people and said we need to turn the water back on. He thought that was done. Did they ever tell him that they had done so? They assured him they would. They didn't tell him—there's no evidence in the record that they told him that they did, but the evidence is that they assured— Is there any evidence in the record that FUN believed in good faith that there was water at any time after April 2017? Your Honor, he moved $500,000 of inventory— I'm not asking that question. I'm asking what evidence there is that FUN believed in good faith that there was water in the system any time after April 2017. It would be his own testimony that after making those calls to city representatives, the city rules require that that be accomplished within 24 hours, and that never happened. And we weren't told about that. It's not the question I asked. Maybe it's the best you have. No, no. I think, Your Honor, there is—the evidence in the case is that he was assured the matter was being handled. The policy specifies that you have to know that there's an impairment. It doesn't say you have to know or should have known. And so, as a matter of fact, his belief was that it was fixed. Otherwise, he wouldn't have acted the way he did. What was the basis of a belief that there was water? Statements from water department representatives. That it would be fixed. I'm asking what was the basis of a belief that there was actual water in the system? Those statements, and then, Your Honor, then in 2018— So, it's just—you're just asking for legal notice that anything the government says will be done, private parties should just assume has been done. No. That would be a rather serious upending of the normal relations. No. An understanding of government behavior. I understand, Your Honor, but also after he was assured it was fixed— He was not assured it was fixed. No. He was told it would be fixed. It would be fixed. You're right. And after that— There's a big difference. You're right, Your Honor, but after that, he had an inspection. Another inspection in September of 2018, a few months before this fire, and nobody ever told him that there was a problem. The NFPA guidelines specifically say that when one or more impairments are discovered during this testing, the owner and the owner's representative shall be notified in writing, and that never happened. I believe the written documents about that say that the fire extinguishers were being inspected, right? The written—you mean the NFPA— The report of the inspection. No, I believe the inspector inspects the whole system, and that led to the initial problem in— I understand your belief. Yeah. The document refers to extinguishers. The NFPA document? No. Oh, the fire's document. The inspector's report. Perhaps, but when the inspections are conducted, they check to make sure that the water supply is going to the sprinkler system, and that's why in 2017, two years earlier, in a totally different insurance policy, this issue came up, and Mr. Cahill was assured that the problem would be fixed. He thought it was a matter of just turning a knob, and then he had a subsequent inspection, and nobody ever told him it wasn't fixed. And as I say, Your Honors, he moved all of his $500,000 worth of inventory over there. He wouldn't have done that if he didn't think it was fixed. And to be honest, isn't that a factual dispute? This wasn't a jury trial. Isn't it up to the jury to decide whether he knew? And the policy states you know. It doesn't say you should have known. If I can just go back briefly here to this private water line that you're right, Your Honor, Judge Easterbrook, I don't think it really matters. It is a practical matter. The court didn't grant summary judgment on that issue of the condition anyway. He granted it on the issue of the exclusion, and the exclusions specifically say that we won't pay if you knew of any suspension or impairment in the protective safeguards listed. There's a question of fact as to whether that private main that the judge decided was a private main was in fact one of the protective safeguards listed. Or you failed to maintain any protective safeguard listed over which you had control. There's no evidence to suggest we had any control over that line that was cut and capped. So, Your Honors, to me there's a clear question of fact about whether or not he knew this thing wouldn't work. I think that the overwhelming evidence would suggest that he didn't know. Otherwise, he wouldn't have done what he did, moving his inventory over there. And I'd like to save just the remaining portion of this for rebuttal. Certainly. Thank you, Your Honor. Mr. Garish. Thank you. Good morning, Your Honor. May it please the Court. Jeffrey Garish on behalf of Frank and Moose. This case requires nothing more than application of unambiguous language in the protective safeguards endorsement. Judge Easterbrook, your questions hit the nail on the head from my perspective. Why isn't the 2018 inspection report sufficient to create a genuine issue of fact? Because the language of the first exclusion in the endorsement says, we will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you knew of any suspension or impairment. So did he know, prior to the fire, of any suspension or impairment? Ten years later? I suppose the fire is ten years later. Does that exclusion negate the fire coverage for the rest of time? On its plain language, it does. That's the position you're taking? Well, I understand the Court's question. That's obviously a challenging hypothetical if you go far back. But this is during the Frank and Moose was on the risk during 2017. This is a renewal of that policy. And the language is clear. If, prior to the fire, you knew, you have to notify us. And it's important to keep in mind, this is a very easy condition to comply with. There's two different conditions in this endorsement. One of them deals with maintenance. And that's got the two parts. You have to maintain a sprinkler system. And then in exclusion two, you have to maintain it in working order to the extent you have control of it. Those are important. But this separate exclusion has nothing to do with maintaining it. This just says, if you knew prior to the fire of any impairment or suspension, you have to notify us. That is a very easy condition to comply with. Just let us know. That's it. So all he has to do is, when this policy is put in place, you know what, this wasn't working at this one point. He satisfied that. That's all he had to do. And the purpose of this is so that the insurer can get involved. This case is Exhibit A for why this endorsement exists. On one hand, the insured agrees to maintain it and agrees to maintain it in working order to the extent they can control it. But the insured also agrees to give notice to the insurer if, prior to the fire, they knew of any impairment. And it's important because the insurer wants to know. They want to know if there was any impairment so they can get involved. And if he had complied with this, they would have then had the opportunity to get involved. And it would have probably helped because he says he tried to maintain it. It never worked. He never did get it going. But if Frank and Muth had gotten the notice that they agreed by contract to provide, they could have gotten involved. Notice provisions. Or they could have canceled the endorsement. Exactly. Or not issued the policy. And I know the court is familiar with there's a lot of insurance policies that have notice provisions like this. I'm sure the court has seen liability policies that have notice requirements. You provide notice of a claim, notice of an accident. That's important to insurers. And, by the way, some of those notice provisions, a typical notice provision in a liability policy doesn't state what the consequence is of failing to provide notice. And that's why a lot of states, including Indiana, require an insurer to show prejudice in the liability context because the policy language isn't clear. This is absolutely clear. It says, we will not pay for loss or damage caused by or resulting from fire if prior to the fire you knew of any suspension or impairment. Couldn't be clearer. They haven't argued that there's any ambiguity. This doesn't involve Judge Hamilton. It's a tough one. I get it. Ten years earlier, the tougher hypothetical, I understand. But the language says what it says. And the reality is this was not long prior to the actual fire. So they don't even have good facts. They haven't argued that there's any ambiguity. They never argued, to your question, Judge Easterbrook, there's never any suggestion that they ever provided Frankenmuth notice of any prior impairment. And they knew about it. They knew about it. They didn't provide the notice. It's really as straightforward an application of this provision as I think you can find, even aside from the maintenance problems that they've got. And that's what they've focused very heavily in their briefing about what they did to try to maintain the sprinkler system. Maybe the reason they did that is because they don't have any facts to support compliance with the notice provision because, of course, they don't. I will be happy to answer any questions if the court has any. But I think that covers it. And we rest on a brief. They just haven't said anything because I guess they have nothing to say on how they complied with the notice requirement. And under the notice requirement, the trial judge got it right. I know I said I was going to stop. The only other point I wanted to make, this is a very thorough, detailed opinion. I think Judge Leidy got it exactly right. It was, I thought, pretty unassailable reasoning. They haven't even really attacked the reasoning on the notice provision, I think, probably because there's not really anything that they can say. So if the court has no questions, I will stop talking. Thank you, Mr. Garish. Anything further, Mr. Foley? Yes. The police and court. Your Honor, I think if you made a good point on how far back you have to go, what they're basically saying, that if at any time, under any insurance policy, I knew that the system was suspended for any reason, and I didn't tell Frankenmuth, then the policy is voided, no matter what happened after that. And the notice provision specifically states that unless you can fix it within 48 hours, city rules require that if there's a suspension for any reason, they've got 24 hours to fix it. So when Mr. Cahill contacted them and was told it was taken care of, he thought it was taken care of within the requirement of the rule. Otherwise, how far back can you go? And it would make no sense. They could say, well, you didn't notify us. Something happened 10 years ago. However, a few months before this, we had an inspection, and nobody ever told us there was a problem. So as far as we knew, that system was working. And, Your Honors, isn't that really a factual dispute here? I mean, we were thrown out in summary judgment. And whether or not he knew or should have known, the policy doesn't say should have known. It says you knew. And there's a complete question of fact on whether or not he knew that it was failed at the time. Thank you, Your Honors. Case is taken under advisement. Thank you.